UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

—————————————————— )
                                                    )
TONY GONZALEZ,                                      )
                        Plaintiff,                  )
                                                    )
            v.                                      )        No. 1:21-cv-00349-MSM-LDA
                                                    )
PATRICIA COYNE-FAGUE,                               )
Director, R.I. DEPARTMENT OF                        )
CORRECTIONS, et al,                                 )
                        Defendants.                 )
—————————————————— )

MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

Tony Gonzalez is an inmate in the custody of the Rhode Island Department of

Corrections ("DOC").  He is proceeding *pro se* on a complaint that centers around his

desire to obtain sexually explicit materials while incarcerated.  His several claims are

related:  he claims a First Amendment right to the material, he seeks the services of

a forensic psychiatrist to press his contention that these materials are required for

his successful rehabilitation, and he faults the grievance process at DOC that has

turned down his administrative requests.

Mr. Gonzalez is not the first to seek such material while incarcerated.  And

while there is no doubt a right of the non-imprisoned to obtain and view the type of

pictures Mr. Gonzalez seeks, prisoners do not fare so well.  An inquiry into the

1

constitutionality of prison rules is undertaken with the recognition that strict scrutiny, required outside the walls when government impinges upon fundamental rights, is not generally the appropriate review inside the walls.  Although "prison walls do not form a barrier separating prisoners from the protections of the Constitution," the standard to pass constitutional muster is lower for rules affecting only the incarcerated:  "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Salley,* 482 U.S. 78, 89 (1987).  That lower level of scrutiny is justified to give appropriate deference to the judgment of prison officials.  "'[S]uch a standard is necessary if "prison administrators ..., and not the courts, [are] to make the difficult judgments concerning institutional operations." *Id.* (quoting *Jones v. North Carolina Prisoners' Union,* 433 U.S. 119, 128 (1977)).

While there appears to be some conflict among the Circuits about whether prisons must lay an evidentiary basis for the rationality of pornography restrictions, at least as applied to non-sex offender prisoners,[1] other courts in this Circuit have

---

[1] In the federal system, the "Ensign Amendment" to an appropriations bill, since codified at 28 U.S.C. § 530C(b)(6) (2005), prohibits the use of Bureau of Prisons funds to in any way facilitate the distribution of pornography.  Ford, "First Amendment Rights Behind Bars:  to Deny a Prisoner Pornography," 13 V.L.S.E.L.J. 73 (2006).  Federal courts, according to this article, have split on its constitutionality in the absence of an evidentiary record linking rehabilitation to the prohibition of pornography. *Compare, Ramirez v. Pugh,* 379 F.3d 122, 124 (3d Cir. 2004) (requiring record, at least with respect to non-sex offender inmates) *with Amatel v. Reno,* 156 F.3d 192, 194 (D.C.Cir. 1998) (upholding on facial reasonableness).   Mr. Gonzalez includes a discussion of the Ensign Amendment in his memorandum but the defendants point out that because DOC does not receive Bureau of Prisons funding, the Ensign amendment is irrelevant to this action.  It does appear from the Complaint that DOC relies on its own regulation, not the United States Code.

upheld similar regulations.[2]  Indeed, another judge in this district has specifically upheld these DOC rules about receipt of pornography. *Canada v. Wall,* C.A. No. 17-102-JJM-PAS, 2018 WL 1638332, at *2 (D.R.I. April 3, 2018.).  That decision noted a similar result in a lawsuit by the same plaintiff against the Virginia prison system for the same restriction.  *Id.,* noting *Canada v. Ray,* No. 7:08cv00219, 2011 WL 565611, at *6-7 (W.D.Va. Feb. 9, 2011), *aff'd,* 437 Fed. Appx. 263 (4th Cir. 2011) ("[It is] axiomatic that the possession of intimate photographs of friends, girlfriends, or wives has a greater potential to lead to tension and conflict ..., and, therefore, that banning intimate personal photographs is rationally related to controlling conflict.").  *See, Morales v. Spencer,* No. 15-cv-10074-MPK, 2016 WL 3746472, at *5 (D. Mass. July 8, 2016) ("To the extent Morales challenges the classification as contraband several magazines and art books, he fails to state a claim.  As noted by defendants, '[f]ederal courts have uniformly rejected First Amendment challenges to bans by prison authorities on inmate access to pornography.'"); *Lepine v. Grodeur,* No. CV 97–72–M, 1999 WL 814277, at *8 (D.N.H. Sept. 30, 1999) (upholding on summary judgment regulation prohibiting depictions of female homosexual acts). In *Moses v. Dennehy,* 523 F. Supp. 2d 57, 63 (D. Mass. 2007), the Court, in upholding a "ban on nude, semi-nude, or sexually explicit material [as] not wholly irrational or arbitrary on its face with respect to prison safety," declared that "as [a]

---

[2] *Silva v. Clarke,* Civil Action No. 10–11381–RGS, 2010 WL 5441906, at *2 (D. Mass. Dec. 22, 2010) (upheld a similar regulation in the face of a religious exercise challenge).

matter of law … there is a rational relationship between the banning of sexually explicit material and the safety and rehabilitation efforts" of the department of corrections.[3]

Thus, the Complaint of a First Amendment violation fails to state a plausible constitutional claim for relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Since the regulation is valid considering the discretion awarded prison officials in determining rules related to security, Mr. Gonzalez' effort to challenge the rule by presenting expert testimony – assuming there are experts willing to so testify[4] – that the restriction does not promote rehabilitation, would be unavailing. For that reason, the prison's failure to facilitate such an expert opinion does not state a claim for relief.

Even if it did, because of the prevailing view at least in this Circuit that such prison restrictions are constitutional, the defendants in this 42 U.S.C. ¶ 1983 action would be entitled to qualified immunity. "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Guzman-Rivera v.*

---

[3] While reviewing a Motion for Summary Judgment, where there were affidavits before the Court, the First Circuit upheld the facial validity of a similar rule in Massachusetts in *Josselyn v. Dennehy,* 333 Fed.Appx. 581, 584 (1st Cir. 2009). *See Reynolds v. Quiros,* ___ F.4th ___, 2022 WL 319835, at *8 (2d Cir. 2022) (upholding reasonableness of regulation after bench trial focusing on the hostile workplace resulting from prisoner displays of pornographic material).

[4] Mr. Gonzalez does not, either in his Complaint or Memorandum of Law (ECF Nos. 1, 1-3) identify such an expert by name or indicate that there is any basis for believing an expert exists who would testify that the banning of pornographic material is antithetical to rehabilitation. His claim, therefore, would seem to include a request for relief that would require DOC to not only pay for, but also to locate, such a witness.

*Rivera-Cruz*, 98 F.3d 664, 666 (1st Cir. 1996) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

Finally, Mr. Gonzalez's attack on the DOC grievance policy itself is confusing and difficult to discern.  In his initial Memorandum filed with the Complaint, he characterized "Claim #3" by describing that the purpose of the grievance process is to "remedy a wrong."  (ECF No. 1-3, at 4).  He recited that DOC staff are required to adhere to "the highest ethical standards" and "assure procedural protections."  It is unclear from the Complaint precisely what the allegations are that, in his view, causes the DOC grievance procedure, on its face or as applied to Mr. Gonzalez here, to violate due process.  In his subsequent Memorandum objecting specifically to the Motion to Dismiss, Mr. Gonzalez states he would not have had to bring this civil complaint had Director of Corrections Coyne-Fague and others actually adhered to ethical standards.  (ECF No. 10, at 3).  He disavows claiming that DOC has failed to follow its own policies, and seeks an order requiring the defendants to "repeal the D.O.C.  policies to conform with constitutional rights of due process."  *Id.* at 5-6.  His legal argument, however, is confined to an application of *Turner* with respect to the pornography regulation.

While the Court is mindful of the lenity with which it should view *pro se* pleadings, *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (*per curiam*), there nonetheless must be sufficient definition to the allegations to allow the Court to determine whether a plausible claim for relief is stated.  *Ashcroft v. Iqbal,* 556 U.S. at 678.  The challenge to the DOC grievance process does not meet that standard.

For the reasons outlined above, the Defendants' Motion to Dismiss (ECF No. 8) is GRANTED.

IT IS SO ORDERED:

Mary S. McElroy,
United States District Judge

March 9, 2022